UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TROY RUTAR,

                              Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.

NO:  1:16-CV-3054-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 15, 16.  D. James Tree represents Plaintiff.  Michael Tunick

represents Defendant.  The Court has reviewed the administrative record and the

parties' completed briefing and is fully informed.  For the reasons discussed below,

the Court grants Defendant's motion and denies Plaintiff's motion.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is

limited: the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012) (quotation and citation omitted). "Substantial evidence"

means relevant evidence that "a reasonable mind might accept as adequate to

support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated

differently, substantial evidence equates to "more than a mere scintilla[,] but less

than a preponderance." *Id.* (quotation and citation omitted). In determining

whether this standard has been satisfied, a reviewing court must consider the entire

record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. If the evidence in the record "is

susceptible to more than one rational interpretation, [the court] must uphold the

ALJ's findings if they are supported by inferences reasonably drawn from the

record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Further, a district court "may not reverse an ALJ's decision on account of an error

that is harmless." *Id.* An error is harmless "where it is inconsequential to the

[ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation

omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c);

*Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 28, 2012, Plaintiff Troy Antonio Rutar concurrently applied for disability insurance benefits and supplemental security income, and alleged an onset date of October 1, 2009. *See* Tr. 176-79; 191-93. Plaintiff asserted that he had not been able to work due to fibromyalgia, hepatitis C, and degenerative disc disease. Tr. 23-24; 60. He was last insured for disability insurance benefits on December 31, 2011, and had previously worked as a ranch hand, casino dealer, cabinet assembler, and landscape laborer. *See* Tr. 23; 25; 28; 61; 196; 211.

Plaintiff's claim for disability insurance benefits was denied both initially and upon reconsideration. Tr. 60; 62-79; 80-90. On reconsideration of Plaintiff's supplemental security income claim, state agency medical consultant Charles Wolfe, M.D. opined that Plaintiff became disabled as of December 4, 2012 based on his age and by application of the Medical–Vocational Rule 201.10. *See* Tr. 80-90; 92. Plaintiff was awarded supplemental security income benefits as of December 2012. Tr. 21; 23; 28-29.

Thereafter, a disability insurance benefits hearing was held on July 15, 2014, before an Administrative Law Judge ("ALJ"). Tr. 34; 128-29. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of October 1, 2009, through the date he was last insured,

December 31, 2011. Tr. 23. At step two, the ALJ determined that Plaintiff had a severe impairment of degenerative disc disease ("DDD") of the lumbar and cervical spine. Tr. 23. The ALJ also found that although Plaintiff was diagnosed with hepatitis C, it did not cause more than minimal functional limitations. Tr. 24. Similarly, although treatment notes suggest fibromyalgia, the ALJ found that it is a non-severe impairment. Tr. 24. At step three, the ALJ determined that Plaintiff's DDD did not meet or medically equal a listed impairment. Tr. 24-25.

At step four, the ALJ performed a residual functional capacity ("RFC") analysis. Tr. 25-28. Based on the RFC finding, at step 5, the ALJ found that although Plaintiff was unable to perform any past relevant work, he could perform work existing in significant numbers in the national economy such as a cashier II, assembler, and semi-conductor assembler. Tr. 27-29; 55.

On September 23, 2014, Plaintiff appealed the denial of disability insurance benefits to the Social Security Appeals Council (Tr. 17), which denied review (Tr. 1-4), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying his disability insurance benefits under Title II of the Social Security Act. Plaintiff raises four issues for review:

1. Whether the ALJ erred in failing to engage a medical specialist to determine the onset date;

2. Whether the ALJ erred in rejecting Plaintiff's subjective complaints;

3. Whether the ALJ erred in finding Plaintiff's hepatitis C and fibromyalgia non-severe; and

4. Whether the ALJ erred in limiting the weight of various medical providers' opinions.

*See* ECF No. 15 at 7. The Court evaluates each issue in turn.

## DISCUSSION

### A. Onset Date for Disability Finding

Plaintiff requests that the Court remand the matter to determine Plaintiff's disability onset date. *See* ECF No. 15 at 16-17. Plaintiff argues that Social Security Rule ("SR") SR 83-20 required the ALJ to engage a medical expert to determine the onset date because the ALJ inferred that Plaintiff was disabled as of December 4, 2012, by evaluating Plaintiff's age (relying on state agency reviewing physician Charles Wolfe, M.D.'s opinion). Tr. 88-89. Defendant argues that there is no ambiguity because the ALJ found that Plaintiff was not disabled at any time from October 1, 2009, the alleged onset date, through December 31, 2011, the date last insured. ECF No. 16 at 19 (citing Tr. 21; 29). The Court agrees.

1     A "claimant has the burden of proving that he became disabled prior to the

2     expiration of his disability insured status." *Macri v. Chater,* 93 F.3d 540, 543 (9th

3     Cir. 1996) (citing *Flaten v. Secretary of Health & Human Serv.,* 44 F.3d 1453,

4     1457 (9th Cir. 1995)).  Pursuant to SSR 83-20, an ALJ must seek medical expert

5     testimony to determine the onset date only when the "medical evidence is not

6     definite" and "medical inferences" are necessary.  *Armstrong v. Comm'r of Soc.*

7     *Sec. Admin.,* 160 F.3d 587, 590 (9th Cir. 1998).  However, SSR 83–20 does not

8     free the claimant from his or her burden to prove disability within the meaning of

9     the Social Security Act.  *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1520; SR 83-

10    20.

11        A determination of disability inexorably precedes a determination of the

12    onset date.  *See Sam v. Astrue,* 550 F.3d 808, 809-10 (9th Cir. 2008) (holding that

13    "SSR 83–20 does not require a medical expert where the ALJ explicitly finds that

14    the claimant has never been disabled"); *see also Brinegar v. Astrue,* 337 F. App'x

15    711, 712 (9th Cir. 2009) (holding that because the ALJ found the claimant "was

16    not disabled . . . at any time through the date of this decision," the ALJ was not

17    required to use a medical expert).

18        The ALJ found Plaintiff "was not under a disability, as defined in the Social

19    Security Act, *at any time* from October 1, 2009, the alleged onset date, through

20    December 31, 2011, the date last insured (20 CFR 404.1520(g))."  Tr. 29

(emphasis added). Plaintiff acknowledges that he was found to be disabled for supplemental security income benefits beginning in December 2012, because Dr. Wolfe recognized additional adversities supporting application of the advanced age category, as he was on the borderline of that age category. ECF No. 17 at 7; Tr. 88-89. Because application of the grids caused Plaintiff to be declared disabled, the ALJ did not err when he did not seek another medical expert in addition to Dr. Wolfe's analysis.

## B. Adverse Credibility Determination

Plaintiff contends that the ALJ improperly discounted his subjective complaints and failed to provide clear and convincing reasons for doing so. ECF No. 15 at 17-20. Defendant argues that the ALJ found Plaintiff not credible because Plaintiff misrepresented his drug use, his complaints were inconsistent with the objective and physical examination findings, and his activities were not as limited as the ALJ would expect. ECF No. 16 at 6.

In the event an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal quotation marks and citation omitted). In making such determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation

for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Garrison*, 759 F.3d at 1014-15 (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, the Court finds that the ALJ provided specific, clear, and convincing reasoning supported by substantial evidence for finding Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms not "entirely credible." Tr. 24-27; *Garrison*, 759 F.3d at 1014-15. First, there is no evidence of malingering in this case. *See* Tr. 23-29. Rather, the ALJ found that Plaintiff's "pain complaints exceed objective and physical exam findings." Tr. 26. Specifically, the ALJ noted multiple evaluations finding Plaintiff to be "in no acute distress," "ambulatory with a normal gait," able to "walk without difficulty," exhibiting a "good range of motion," with "no vertebral tenderness," and capable of a "negative straight leg test raise." Tr. 23, 26 (citing Tr. 275, 279, 335, 365).

Despite Plaintiff's testimony complaining of disabling back and neck pain, the ALJ

noted that an MRI of the lumbar spine in April 2010 was "unremarkable." Tr. 26

(citing Tr. 388). Moreover, the ALJ found that

> physical exam findings were mild or within normal limits. On physical
> examination in April 2010, the claimants had 5/5 muscle strength of the
> upper extremities and 4/5 strength of the lower extremities. He had
> tenderness to palpation at T10-L4. However, he had a normal gait and
> station. He was able to get up and down from the exam table without
> difficulty.

Tr. 26 (citing Tr. 286, 335). The ALJ also noted that during an exam in January

2011, Plaintiff appeared comfortable and "was able to walk without difficulties and

sit in the exam room comfortably." *Id.* (citing Tr. 279).

The inconsistencies between Plaintiff's reported difficulties lifting,

squatting, bending, standing, reaching, walking, sitting, kneeling, and stair

climbing, *see* Tr. 23, and the medical evidence provide a permissible reason for

discounting Plaintiff's credibility. *See Thomas*, 278 F.3d at 958-59 ("[t]he ALJ

may consider . . . testimony from physicians and third parties concerning the

nature, severity and effect of the symptoms of which the claimant complains.")

(internal citations and modifications omitted); *see also Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected

on the sole ground that it is not fully corroborated by objective medical evidence,

the medical evidence is still a relevant factor in determining the severity of the

claimant's pain and its disabling effects.") (citation omitted).

The ALJ reasoned that Plaintiff's frequent misrepresentations about his drug use or drug history undermine Plaintiff's credibility. Tr. 26. The ALJ noted:

> For example, in March 2010, [Plaintiff] denied any use of illegal drugs other than smoking marijuana on occasion (Exhibit 5F at page at page 27). The following month, Amber Figueroa, DO noted that she saw [Plaintiff] back in July and he had a positive drug screen for cocaine at that time (Exhibit 5F at page 22). In August 2010, [Plaintiff] denied any history of illicit drug use (Exhibit 5F at page 19). In January 2011, [Plaintiff] reported that he was not doing any illegal drugs. He reported that he used to do marijuana in the past (Exhibit 5F at page 15). In April 2011, after Dr. Goshike refused to prescribe narcotic medication, [Plaintiff] disclosed that he would try other means of getting illicit drugs. He admitted that he had to get illegal drugs in the past such as marijuana when he did not have a medical coupon or finances to afford medication (Exhibit 5F at page 11).

Tr. 26-27 (citing Tr. 275, 279, 283, 286, 291). The ALJ's consideration of Plaintiff's truthfulness in assessing his credibility is another permissible reason in support of the ALJ's negative credibility determination. *See Thomas*, 278 F.3d at 958.

In sum, having thoroughly reviewed the record, the Court concludes that the ALJ provided several specific, clear, and convincing reasons for discounting Plaintiff's testimony. *See Garrison*, 759 F.3d at 1014-15. The ALJ did not err in making an adverse credibility determination.

### C. Opinion Evidence

Next, Plaintiff faults the ALJ for improperly discounting the opinions of

Amber Figueroa, D.O. and Deepika Goshike, M.D., disregarding the opinions of

Mark Maiocco, M.D. and Sarah Garrison, ARNP, and giving too much weight to

the opinion of Wayne Hurley, M.D.. *See* ECF No. 15 at 9-16. Plaintiff argues that

had the ALJ adequately weighed the evidence, the opinions would have compelled

a finding of disability and, therefore, the Court should reverse and remand for an

immediate award of benefits. *Id.* at 16.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

but who review the claimant's file (nonexamining or reviewing physicians)."

*Holohan*, 246 F.3d at 1201-02 (brackets omitted). "Generally, a treating

physician's opinion carries more weight than an examining physician's, and an

examining physician's opinion carries more weight than a reviewing physician's."

*Id.* "In addition, the regulations give more weight to opinions that are explained

than to those that are not, and to the opinions of specialists concerning matters

relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989).

### a. *Amber Figueroa, D.O.*

Plaintiff argues that it is error for the ALJ to accord little weight to Dr. Figueroa's opinion simply because it does not comport with objective medical evidence. ECF No. 15 at 10-11 (citing *Rollins v. Massanaro*, 261 F.3d 853, 856-57 (9th Cir. 2001).

The ALJ noted that Dr. Figueroa opined that Plaintiff was severely limited in his ability to work. Tr. 27 (citing Tr. 334-37). However, the ALJ gave Dr. Figueroa's opinion little weight because "it is inconsistent with objective and physical exam findings." *Id.* The ALJ reasoned that during an examination, Plaintiff had 5/5 strength of the upper extremities and 4/5 strength of the lower extremities, and normal gait and station. *Id.* The ALJ found that Dr. Figueroa's opinion that Plaintiff was severely limited in his ability to work is inconsistent with

his noted strength and physical abilities. *Id.* The Court finds that the ALJ's reasoning is supported by the evidence. *See* Tr. 335.

Plaintiff's reliance on *Rollins* is inapposite. *Rollins*, 261 F.3d at 856. The ALJ's findings in *Rollins* were inconsistent with "the sort of description and recommendations one would expect to accompany a finding that Rollins was totally disabled under the Act." *Id.* The same applies here. The ALJ determined that the description of Plaintiff's physical strength and evaluation of his gait and station were inconsistent with Dr. Figueroa's severely limited assessment. Tr. 27.

The Court concludes that the ALJ provided sufficient reasoning for giving Dr. Figueroa's opinion little weight because contradictions between her treatment notes and her ultimate conclusion is a legitimate, clear and convincing reason for limiting Dr. Figueroa's opinion. *Bayliss,* 427 F.3d at 1216; *see also Tonapetyan*, 242 F.3d at 1149 ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings."). The ALJ did not err in limiting the weight given to Dr. Figueroa's opinion.

### b. *Deepika Goshike, M.D.*

Plaintiff also faults the ALJ for discounting the opinion of Dr. Goshike, Plaintiff's treating physician. ECF No. 15 at 11-12. The ALJ gave "little weight"

to Dr. Goshike's opinion, finding that her opinion is not supported by the record as a whole for two reasons.  Tr. 27.

First, the ALJ found that in January 2011 Dr. Goshike "opined that [Plaintiff] could sit for 3 hours in an 8-hour workday."  Tr. 27 (citing Tr. 329-30).  Dr. Goshike also opined that Plaintiff "could stand for 3 hours in an 8-hour workday" and "lift up to 25 pounds occasionally and 10 pounds frequently."  *Id.*  However, the ALJ found that Dr. Goshike's opinion is "inconsistent with exam findings that same month during which [Plaintiff] looked comfortable" and "was able to walk without difficulties and sit in the exam room comfortably."  *Id.* (citing Tr. 279).  The ALJ noted that Dr. Goshike also determined that Plaintiff had "good range of motion and no weakness on examination" a few months later in April 2011.  *Id.* (citing Tr. 275).

Second, the ALJ assigned little weight to Dr. Goshike's "subsequent opinions in March 2012 where she indicated that [Plaintiff] could perform essentially light work and July 2012 where [it is] indicated that [Plaintiff] could perform sedentary and later opinion that same month of light work."  *Id.* (citing Tr. 315-16, 318-19, 323-24).  The ALJ reasoned that these opinions are well after the date late insured.  *Id.*

It is well settled that the ALJ may discount an opinion that is unsupported by the record as a whole or by clinical findings.  *See Batson v. Comm'r of the Soc.*

*Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings."). Here, the ALJ pointed to specific evidence conflicting with Dr. Goshike's opinion that Plaintiff could only sit for 3 hours and stand for 3 hours during an 8-hour work day, to support her decision to give little weight to Dr. Goshike's opinion.

In reviewing the record as a whole, the Court finds that the ALJ proffered legitimate clear and convincing reasons supported by substantial evidence in limiting Dr. Goshike's opinions. *See Bayliss,* 427 F.3d at 1216; *Magallanes*, 881 F.2d at 750 (citation omitted) (stating that where there is "more than one rational interpretation," courts are required to uphold an ALJ's decision). Accordingly, and given that the ALJ is charged with resolving conflicts or ambiguities in medical testimony, the Court finds that the ALJ did not err given the legitimate clear and convincing reasons expressed.

### c.  *Mark Maiocco, M.D. and Sarah Garrison, ARNP*

Plaintiff next argues that the ALJ erred by failing to consider the opinions of treating physician, Dr. Mark Maiocco, and examining provider, Sarah Garrison, ARNP. ECF No. 15 at 12.  Defendant responds that the ALJ need not consider either opinion because Dr. Maiocco's and Ms. Garrison's findings occurred well after the date Plaintiff was last insured, December 31, 2011.  ECF No. 16 at 13.

"[M]edical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir. 1988). That is, even if several years have passed between the date last insured and the date of the examination, a medical opinion or evaluation may be relevant "to an evaluation of the pre-expiration condition." *Id.* Notwithstanding, a retrospective opinion may be discredited if it is inconsistent with, or unsubstantiated by, medical evidence from the period of claimed disability. *Johnson v. Shalala,* 60 F.3d 1428, 1433 (9th Cir. 1995).

Dr. Maiocco diagnosed chronic fibromyalgia and other conditions, opined that the debilitating limitations existed since at least August 2013. Tr. 420-21. Dr. Maiocco opined that Plaintiff's "severe" chronic back pain necessitated Plaintiff having to lie down for one hour three times per day. Tr. 421. Dr. Maiocco also opined that Plaintiff would likely miss more than four days of work per month and rated his prognosis as "poor." *Id.* Similarly, Ms. Garrison opined in December 2012, that Plaintiff's DDD impairment is "marked" affecting his ability to stand, walk, lift, carry, handle, push, pull, reach, stoop, or crouch. *See* Tr. 413. Ms. Garrison opined that Plaintiff was capable of performing sedentary work in a regular, predictable manner despite impairment. *See* Tr. 413-14.

Defendant argues that the ALJ need not discuss the opinions because both were rendered after Plaintiff's date last insured. ECF No. 16 at 13-14. The Court

agrees. Any error in failing to discuss Dr. Maiocco's later opinion is harmless because the ALJ discussed and discounted Dr. Goshike's opinion, Plaintiff's treating doctor, using contemporaneous examinations and records. Further Ms. Garrison's opinion that Plaintiff could perform sedentary work is consistent with the ALJ's findings regarding alternative work. No error has been shown.

### d. *Wayne Hurley, M.D.*

Plaintiff argues that the ALJ gave too much weight to non-examining state medical expert Dr. Wayne Hurley. ECF No. 15 at 14 (citing Tr. 27-28). Plaintiff explains that the ALJ accorded "some weight," which "was not in keeping with the SSA's rules." *Id.*

Where an ALJ does not set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. *See Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir. 1996). If a non-examining medical expert's opinion is contrary to a treating medical expert opinion, an ALJ may accord more weight when it is consistent with other independent evidence in the record. *Tonapetyan*, 242 F.3d at 1149 (citation omitted).

Here, the ALJ explained that she accorded "some weight" to Dr. Hurley's opinion because it is "consistent with objective and physical exam findings" as well as Plaintiff's "activities of daily living." Tr. 27-28. The Court finds that the

ALJ set forth adequate specific, legitimate reasons for according Dr. Hurley's

opinion some weight.

### D. Assessment of Plaintiff's Fibromyalgia and Hepatitis C

Plaintiff faults the ALJ for failing to classify his fibromyalgia and hepatitis

C as severe. ECF No. 15 at 8-9. In turn, Plaintiff argues that the ALJ failed to

factor those limitations in the RFC analysis, which would have limited Plaintiff to

less than sedentary work and required a disability finding. *Id.* at 9.

Step-two of the evaluation process requires the ALJ to determine if the

claimant has a severe medically determinable physical or mental impairment or a

combination of impairments that is severe. 20 C.F.R. § 416.920(a)(4)(ii). An

impairment is "not severe" if "it does not significantly limit [the claimant's]

physical ability to do basic work activities," such as "walking, standing, sitting,

lifting, pushing, pulling, reaching, carrying or handling." *Smolen v. Chater*, 80

F.3d 1273, 1290 (9th Cir. 1996).

Generally, "the step two inquiry is merely a *de minimis* screening device to

dispose of groundless claims," *id.*; as a result, the ALJ's failure to classify an

impairment as severe is harmless if the ALJ proceeds with the evaluation process

and considers both severe and non-severe impairments when formulating the RFC.

Here, at step two, the ALJ found Plaintiff had several severe impairments;

however, the ALJ found Plaintiff's possible fibromyalgia is a non-severe

1   impairment and that there is no evidence that hepatitis C caused more than a

2   minimal functional limitation. Tr. 24.

3       **a. *Hepatitis C Assessment***

4       The ALJ acknowledged Plaintiff's hepatitis C diagnosis, but found at step

5   two that there is "no evidence that hepatitis C caused more than minimal functional

6   limitation." Tr. 24. The ALJ noted that Plaintiff's "ongoing use of marijuana has

7   caused his [hepatitis C] treatment to be deferred." *Id.* (citing Tr. 349).

8       Plaintiff argues that the record contains evidence refuting the ALJ's finding.

9   ECF No. 15 at 9. Specifically, Plaintiff argues that Dr. Goshike attributed

10   Plaintiff's multiple joint pains to hepatitis C. *Id.* (citing Tr. 288). Dr. Goshike

11   found that Plaintiff's hepatitis C is "likely causing multiple joint pains." Tr. 288.

12   However, she did not opine that the pains caused more than a minimal functional

13   limitation and the ALJ properly credited her opinion little weight. *See id.* Rather,

14   Dr. Goshike notes that his pain is "tolerable" and Plaintiff "feels better than

15   before." *Id.*

16       Next, Plaintiff argues that Dr. Figeruoa determined that his "hepatitis C

17   w[ith] body aches" is severe reflecting an "[i]nability to perform one or more basic

18   work-related activities" of sitting, standing, walking, lifting, handling, and

19   carrying. ECF No. 15 at 9 (citing Tr. 336, 339). The ALJ found that Dr.

20   Figueroa's opinion is inconsistent with objective and physical exam findings,

noting 5/5 strength of the upper extremities, 4/5 strength of the lower extremities, and normal gait and station.  *Id.*  Accordingly, the Court affirms the ALJ's step two conclusion that Plaintiff's Hepatitis C was not severe.  Furthermore, given the ALJ's alternative sedentary work findings, no harmful error has been shown.

### b. *Fibromyalgia Assessment*

The ALJ based her fibromyalgia finding, in part, on a lack of ongoing overall body complaints and treatment.  Tr. 24.  The ALJ also reasoned that although Deepika Goshike, M.D. noted that a 14/18 trigger point exam finding was suggestive of fibromyalgia in February 2010, *see* Tr. 24 (citing Tr. 292-93), the following month Dr. Goshike noted that an ESR "was actually within normal limits," *see id.*; Tr. 291.  The ALJ alternatively found that even if fibromyalgia is established, "it is a non-severe impairment."  Tr. 24

Plaintiff argues that the ALJ failed to consider that he was seen numerous times for his chronic pain, later diagnosed with fibromyalgia, and that he constantly reported multiple body aches.  ECF No. 15 at 8 (citing Tr. 292, 279); 17 at 8 (citing Tr. 339).  Plaintiff also argues that he was prescribed medications for treating his fibromyalgia.  *Id.* (citing Tr. 288).  Plaintiff argues that the ALJ ignored that after his last date of insured, in May and July 2012, he had 16/18 positive trigger points.  *Id.* at 8-9.  Plaintiff contends the ALJ erred by finding this to be a non-severe impairment.  The crux of Plaintiff's argument must be that he is

more impaired than the ALJ found. But, as discussed above, the evidence does not support a greater effect on Plaintiff's ability to work.

Given the ALJ's alternative findings—findings suggestive of fibromyalgia, and even if fibromyalgia is established, it is a non-severe impairment—no harmful error has been shown.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**.

The District Court Executive is directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

**DATED** April 12, 2017.



THOMAS O. RICE
Chief United States District Judge